UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
SOUTHERN SHIPPING MANAGEMENT CO. LTD.,        :
                                              :
                                              :   08 CV 6194 (WHP)
                    Plaintiff,                :
                                              :
    - against -                               :   ECF CASE
                                              :
AGRENCO MADEIRA COMERICO                      :
INTERNACIONAL LDA,                            :
                                              :
                    Defendant.                :
-------------------------------------------------------------X



RECEIVED
JUL 15 2008
U.S.D.C. S.D. N.Y.
CASHIERS

## AMENDED VERIFIED COMPLAINT

Plaintiff, SOUTHERN SHIPPING MANAGEMENT CO. LTD.[1], (hereafter referred to as "SOUTHERN SHIPPING" or "Plaintiff"), by and through its attorneys, Lennon, Murphy & Lennon, LLC, as and for its Amended Verified Complaint against the Defendant, AGRENCO MADEIRA COMERICO INTERNACIONAL LDA (hereinafter referred to as "AGRENCO" or "Defendant") alleges, upon information and belief, as follows:

1.      This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and 28 United States Code § 1333. This claim involves the breach of a maritime contract of charter. This matter also arises under the Court's federal question jurisdiction within the meaning of 28 United States § 1331 and the New York Convention on the Recognition and Enforcement of Foreign Arbitral Awards (9 U.S.C. § 201 et seq.) and/or the Federal Arbitration Act (9 U.S.C. § 1 et seq.).

2.      At all times material to this action, Plaintiff was, and still is, a foreign corporation, or other business entity, organized under, and existing by virtue of foreign law with an address at

---

[1] This action was originally filed in the name of China Shipping (HK) Co. Ltd. However, the charter party discussed in the Amended Complaint denotes Southern Shipping Management Co. Ltd, as the vessel owner. Plaintiff is therefore substituting the correct party in interest pursuant to Fed. R. Civ. P. 17(a) and this action shall be deemed to have been commenced in the name of Southern Shipping Management Co. Ltd. as the real party in interest.

Rm. 3001-4, 30/F., Vicwood Plaza, 199 Des Voeux Road Central, Hong Kong and was at all material times the disponent owner of the motor vessel "Silver Mei" (hereinafter the "Vessel").

3.      Upon information and belief, Defendant AGRENCO was, and still is, a foreign corporation, or other business entity, organized under, and existing by virtue of foreign law with a place of business located at Avenida do Infante, 50 Funchal, 9004-521, Ilha da Madeira, Portugal.

4.      By a charter party dated May 28, 2008 Plaintiff voyage chartered the Vessel to Defendant. The charter party called for the carriage of lawful / harmless bulk grain only including soya bean in bulk from East Coast South America (intention Brazil, Argentina) to Mediterranean (intention Italy). *A copy of the charter party dated May 28, 2008 is annexed hereto as Exhibit 1.*

5.      Plaintiff delivered the Vessel into the service of the Defendant on or about May 29, 2008 and has at all times fully performed its duties and obligations under the charter party. Defendant has caused to be loaded onto the Vessel the intended cargo which is now being carried to three (3) intended discharge ports where the vessel is expected to complete discharging operations in the second week of August 2008.

6.      The charter party obligates Defendant AGRENCO to pay to Plaintiff hire for the vessel every 15 days in advance. *See Ex. 1, Clause 5.* The charter party provides for a daily hire rate of $82,500, including overtime. *See Ex. 1, Clause 46.* While Plaintiff has remitted full payment for the first three advance hire payments it has not remitted payment for the fourth hire payment in the sum of $1,191,093.70[2].

---

[2] Each advance 15 day hire payment consists of 15 days of hire multiplied by the charter party daily hire rate of $82,500 for a gross hire of $1,237,500 less a 3.75% address commission payable to Agrenco as charterers resulting in a net advance hire payment of $1,191,093.70.

2

7.      AGRENCO's failure to pay in full the charter party hire due and payable to
Plaintiff constitutes a breach of the charter party.

8.      As a result of AGRENCO's breach of the charter party due to its failure to pay all
charter party hire due and payable. Plaintiff has sustained damages in the total principal amount
of $1,191,093.70, exclusive of interest, arbitration costs and attorneys fees.

9.      Plaintiff reserves its rights to increase the damages asserted herein to reflect
further installments of charter party hire unpaid by the Defendant along with other damages
which may be incurred due to Defendant's breach of its obligations under the charter party
including, but not limited to, the obligation to redeliver the vessel to the Plaintiff with an
equivalent volume of fuel oil aboard the vessel as when she was delivered into service to the
Defendant.

10.     Pursuant to the charter party, disputes between the parties are to be submitted to
arbitration in London subject to English law. Plaintiff specifically reserves its right to arbitration
of its claims against AGRENCO. Plaintiff is preparing to commence London arbitration against
AGRENCO.

11.     This action is brought in order to obtain jurisdiction over AGRENCO and also to
obtain security for CHINA SHIPPING's claims and in aid of arbitration proceedings.

12.     Interest, costs and attorneys' fees are routinely awarded to the prevailing party
under English Law. Section 63 of the English Arbitration Act of 1996 specifically allows for
recovery of these items as part of an award in favor of the prevailing party. As best as can now
be estimated, Plaintiff expects to recover the following amounts at arbitration as the prevailing
party:

| A. | Principal claim: | | $1,191,093.70; |
|----|------------------|---|----------------|
| B. | Estimated interest on claim- 2 years at 6.5% compounded quarterly: | $ | 163,940.94; |
| C. | Estimated arbitration costs: | $ | 50,000.00; and |
| D. | Estimated attorneys' fees and expenses: | | $ 150,000.00. |
| **Total:** | | | **$1,555,034.64.** |

13.    The Defendant cannot be found within this District within the meaning of

Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal

Rules of Civil Procedure[3], but, upon information and belief, Defendant has, or will have during

the pendency of this action, assets within this District and subject to the jurisdiction of this Court,

held in the hands of garnishees within the District which are believed to be due and owing to the

Defendant.

14.    The Plaintiff seeks an order from this Court directing the Clerk of Court to

issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental

Rules for Certain Admiralty and Maritime Claims, attaching, *inter alia*, any assets of the

Defendant held by any garnishees within the District for the purpose of obtaining personal

jurisdiction over the Defendant and to secure the Plaintiff's claim as described above.

**WHEREFORE**, Plaintiff prays:

A.    That process in due form of law issue against the Defendant, citing it to appear

and answer under oath all and singular the matters alleged in the Complaint failing which default

judgment be entered against it;

B.    That since the Defendant cannot be found within this District pursuant to

---

[3] *See Affidavit of Kevin J. Lennon in Support of Prayer for Maritime Attachment attached hereto as Exhibit 2.*

4

Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, this Court issue an Order directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, attaching all goods, chattels, credits, letters of credit, bills of lading, effects, debts and monies, tangible or intangible, or any other funds up to the amount of $1,555,034.64 belonging to, due or being transferred to, from, or for the benefit of the Defendant, including but not limited to such property as may be held, received or transferred in Defendant's name or as may be held, received or transferred for its benefit at, moving through, or within the possession, custody or control of banking/financial institutions and/or other institutions or such other garnishees to be named, and that all persons claiming any interest in the same be cited to appear and pursuant to Supplemental Admiralty Rule B answer the matters alleged in the Complaint;

C.     That the Court retain jurisdiction to compel the Defendant to arbitrate in accordance with the United States Arbitration Act, 9 U.S.C. § 1 *et seq.*;

D.     That this Court retain jurisdiction over this matter through the entry of any judgment or award associated with any of the claims currently pending, or which may be initiated in the future, including any appeals thereof;

E.     That this Court recognize and confirm any arbitration award(s) or judgment(s) rendered on the claims set forth herein as a Judgment of this Court;

F.     That in the alternative this Court enter judgment against the Defendant on the claims set forth herein;

G.     That this Court award Plaintiff the attorneys' fees and costs incurred in this action; and

5

H.    That the Plaintiff has such other, further and different relief as the Court

may deem just and proper.

Dated:    New York, NY
          July 14, 2008

> The Plaintiff,
> SOUTHERN SHIPPING MANAGAMENT
> CO. LTD.
>
> By: _____
>
> Kevin J. Lennon
> Nancy R. Peterson (Siegel)
>
> LENNON, MURPHY & LENNON, LLC
> 420 Lexington Avenue, Suite 300
> New York, NY 10170
> (212) 490-6050 - phone
> (212) 490-6070 - facsimile
> kjl@lenmur.com
> nrs@lenmur.com

6

## ATTORNEY'S VERIFICATION

State of Connecticut )
                      )      ss.:    Town of Southport
County of Fairfield  )

1.   My name is Kevin J. Lennon.

2.   I am over 18 years of age, of sound mind, capable of making this

Verification, and fully competent to testify to all matters stated herein.

3.   I am a partner in the firm of Lennon, Murphy & Lennon, LLC attorneys for the

Plaintiff.

4.   I have read the foregoing Amended Verified Complaint and know the contents

thereof and believe the same to be true and accurate to the best of my knowledge, information

and belief.

5.   The reason why this Verification is being made by the deponent and not

by the Plaintiff is that the Plaintiff is a business organization with no officers or directors now

within this District.

6.   The source of my knowledge and the grounds for my belief are the

statements made, and the documents and information received from, the Plaintiff and agents

and/or representatives of the Plaintiff.

7.   I am authorized to make this Verification on behalf of the Plaintiff.

Dated:    Southport, CT
          July 14, 2008

                                           Kevin J. Lennon

7

# EXHIBIT 1

# Time Charter

GOVERNMENT FORM

Approved by the New York Produce Exchange
November 6th, 1913 - Amended October 20th, 1921; August 6th, 1931; October 3rd, 1946

This Charter Party, made and concluded in Lausanne, ........................... 28th day of ..... May ................ 19 2008

Between Messrs. Southern Shipping Management Co. Ltd., c/o China Shipping (H.K.) Marine Co., Ltd., Hong Kong, as Disponent ................................................................................................................................................

Owners of the good ................................................... Steamship/Motorship " SILVER MSI " - (See Clause 39) ... of ...................

of ........................................ tons gross register, and ............... tons net register, having engines of ........................... indicated horse power

and ........ bulk, and skinny and designed in a thoroughly efficient state and classed ...........................................

at about ........................................ cubic feet bale capacity, and about .......................... tons of 2240 lbs.

deadweight capacity (cargo and bunkers, including fresh water and stores, not exceeding two and one half percent of ship's deadweight capacity, allowing a minimum of fifty tons) on a draft of ..................... feet ................... inches on ............................. Summer freeboard, inclusive of permanent bunkers, which are of the capacity of about ......................... tons of fuel, and capable of steaming, fully laden, under good weather conditions about ......................... knots on a consumption of about ........................ tons of best Welsh coal - best grade fuel oil - best grade Diesel oil,

now ................................................................................................................................................

............ and Messrs. Agrenco Madeira Comercio Internacional Ltda, Charterer of the City of Funchal, Madeira ...........

Witnesseth, That the said Owners agree to let, and the said Charterers agree to hire the said vessel, from the time of delivery, for about one Time Charter trip via East Coast South America (intention Brazil, Argentina) to Mediterranean (intention Italy) directly with lawful / harmless bulk grain only including soya bean in bulk but always excluding any kinds of all seed cakes which include mechanically expelled and/or solvent-extracted meals/pellets/expellers, sunflower seed expellers and any types of expellers.

However soya bean meals, soya bean pellets and sunflower meal pellets are allowed provided a certificate from an independent laboratory/surveyor recognized by the competent authority of the country of shipment should be provided by the Shipper, prior to loading and with actual analysis after loading, stating that the requirements for exemption are met as set out in the schedules for seed cake (b) UN 1386 and seed cake UN 2217 under IMO BC Code - duration about 50/65 days without guarantee ; Vessel only trade via safe anchorage(s), safe berth(s), safe port (s) always accessible. always afloat except NAABSA in Argentina and Brazil grain berths/terminals only; but always within I.W.L. and within trading limit. In case vessel is required to call Argentina Upriver, vessel is only allowed to trade upto San Lorenzo and not North of Terminal 6 and Timbues - within below mentioned trading limits.

Charterers to have liberty to sublet the vessel for all or any part of the time covered by this Charter, but Charterers remaining responsible for the fulfillment of this Charter Party.

Vessel to be placed at the disposal of the Charterers, ~ on passing Gibraltar at any time, day, night, Sundays and holidays included ~

in such dock or at such wharf or place (where she may safely lie, always afloat, at all times of tide, except as where ice provided in clause No. 6), as the Charterers may direct. If such dock, wharf or place be not available at the time required by the Charterers in clause No. 5, Vessel on her delivery arrival first loading port to be

ready to receive cargo with clean-swept holds and tight, staunch, strong and in every way fitted for the service, having water-ballast, winches and donkey-boiler with sufficient steam power, or if non-equipped with donkey-boiler, then other power sufficient to run all the winches at one and the same time (and with full complement of officers, seamen, engineers and firemen for a vessel of her tonnage), to be employed, in carrying lawful merchandise, including petroleum or its products, in proper containers, excluding See Clause 33 - ...........................................

(vessel is not to be employed in the carriage of Live Stock, but Charterers are to have the privilege of shipping a small number on deck at their risk, all necessary fittings and other requirements to be for account of Charterers), in such lawful trades, between safe port and/or ports in British North America, and/or United States of America, and/or West Indies, and/or Central America, and/or Caribbean Sea, and/or Gulf of Mexico, and/or Mexico, and/or South America safe port(s), safe berth(s), safe anchorage(s) - See Clause 63 - and/or Europe

and/or Africa, and/or Asia, and/or Australia, and/or Tasmania, and/or New Zealand, but excluding Magdalena River, River St. Lawrence between October 31st and May 15th, Hudson Bay and all ports always excluding, when out of season, White Sea, Black Sea and the Baltic, ...........................................

................................................................................................................................................

................................................................................................................................................

as the Charterers or their Agents shall direct, on the following conditions:

1. That the Owners shall provide and pay for all provisions, wages lubricant, vessel's garbage removal and consular shipping and discharging fees of the Crew, fines by authorities on crew and/or vessel unless caused by neglect or default on part of Charterers or their Agents shall pay for the insurance of the vessel, also for all the cabin, deck, engine-room and other necessary stores, including fresh and boiler water and maintain her clean and keep the vessel in a thoroughly efficient state in hull, cargo holds, her class, crew and trading certificates valid. Vessel to have all other certificates necessary to comply with current requirements at ports of call, machinery and equipment thereof during the service.

2. That, whilst on hire, the Charterers shall provide and pay for all the fuel except as otherwise agreed, Port Charges, compulsory Pilotages, Danish Pilotages between Skaw and Baltic Sea and Bosphorus pilotages, boatage on Charterers' business. Agencies, stevedoring, tallyman, towage, canal dues, municipality or state taxes hatch watchmen and gangway watchmen unless ordered by the

*M/V " SILVER MEI " / AGRENCO - C/P DATED 28TH MAY, 2008*

*Master, Commissions.*

40  Consular Charges (except those pertaining to the Crew, flag, and all other vessel expenses except those before stated, but when the vessel puts into
41  a port for orders for which vessel is responsible, then all such charges incurred shall be paid by the Owners. Fumigations ordered because of
42  Illness of the crew *or cargoes carried prior to delivery* to be for Owners account. Fumigations ordered because of cargoes carried or ports visited while

43  charter is for Charterers account. ~~All other Fumigations to be for Charterers account while with has been or charter for a continuous period~~
44  ~~of six months or more~~

45  Charterers are to provide necessary dunnage and shifting boards, also any extra fitting requisite for a special trade or unusual cargo, but
46  Owners to allow them the use of any dunnage and shifting boards already aboard vessel. Charterers to have the privilege of using shifting boards
47  for dunnage, they making good any damage thereto.

48  3. That the Charterers, at the port of delivery, and the Owners, at the port of re-delivery, shall take over and pay for all fuel remaining on
49  board ~~the vessel at the current prices at the respective ports, the cost to be deliver with but less than~~ .................... ~~tons and not more than~~
50  .................... ~~tons and to be resold/carried with not less than~~ .................... ~~tons and no more than~~ .................... tons. *See Clause 32 -*

51  4. That the Charterers shall pay for the use and hire of the said Vessel at the rate of *See Clause 46 -* ..................

52  .................... United States Currency ~~per ton on vessel's total deadweight carrying capacity, including bunkers and~~
53  ~~stores on~~ .................... ~~summer freeboard per Calendar Month, commencing on and from the day of her delivery, as aforesaid, and at~~
54  and after the same rate for any part of a month, hire to continue until the hour of the day of her re-delivery in like good order and condition, ordinary
55  wear and tear excepted, to the Owners (unless lost) at *See Clause 55 -* ..................
56  .................... unless otherwise mutually agreed. Charterers are to give Owners not less than *20 / 14 / 10 days approximate and 5 / 3 / 2 / 1 day(s) definite notice*
57  *of re-delivery date and port.*

58  ~~notice of vessel's expected date of re-delivery, and probable port.~~

58  5. Payment of said hire to be made in ~~New York~~ as *per Clause 46* in cash in United States Currency, ~~semi-monthly~~ *every 15 days* in advance, and for
59  the last half-month's *15 days* or
59  part of same the approximate amount of hire, and should same not cover the actual time, hire is to be paid for the balance day by day, as it becomes
60  due, if so required by Owners, unless bank guarantee or deposit is made by the Charterers, otherwise failing the punctual and regular payment of the
61  hire, or bank guarantee, or on any breach of this Charter Party, the Owners shall be at liberty to withdraw the vessel from the service of the Char-
62  terers, without prejudice to any claim they (the Owners) may otherwise have on the Charterers. ~~Time (to count from 7 a.m. on the working day~~
63  ~~following that on which written notice of readiness has been given to Charterers or their Agents before 4 p.m. but if required by Charterers, they~~
64  ~~shall have the privilege of using vessel at once, such time waits to count as hire.~~ *See Clause 46 -*

65  Cash for vessel's ordinary disbursements at any port, may be advanced if required by the Captain, by the Charterers or their Agents, subject
66  to 2 1/2% commission and such advances shall be deducted from the hire. The Charterers, however, shall in no way be responsible for the application
67  of such advances.

68  6. That the cargo or cargoes be laden and/or discharged in any dock or at any wharf or place *in port or outside port (See Clause 62)* that Charterers
69  or their Agents may
direct, provided the vessel can safely lie always afloat at any time of tide, ~~except at such places where it is customary for similar size vessels to safely~~
70  ~~lie aground. (See Clause 56)~~

71  7. That the whole reach of the Vessel's Hold, Decks, and usual places of loading (not more than she can reasonably stow and carry), also
72  accommodations for Supercargo, if carried, shall be at the Charterers' disposal, reserving only proper and sufficient space for Ship's officers, crew,
73  tackle, apparel, furniture, provisions, stores and fuel. Owners ~~have the privilege of the~~ ..................
74  ~~passengers ... per day per passage, per ... for accommodations and meals, however, it is agreed that in case any Passengers are~~
75  ~~carried in the consequences of the carriage of passengers, Charterers not to bear such risk and expense.~~

76  8. That the Captain shall prosecute his voyages with the utmost dispatch, and shall render all customary assistance with ship's crew and
77  boats. The Captain (although appointed by the Owners), shall be under the orders and directions of the Charterers as regards employment and
78  agency; and Charterers are to load, stow, and trim the cargo at their expense under the supervision of the Captain, who is to sign Bills of Lading for
79  cargo as presented, in conformity with Mate's or Tally Clerk's receipts.

80  9. That if the Charterers shall have reason to be dissatisfied with the conduct of the Captain, Officers or Engineers, the Owners shall on
81  receiving particulars of the complaint, investigate the same, and, if necessary, make a change in the appointment.

82  10. That the Charterers shall have permission to appoint a Supercargo, who shall accompany the vessel and see that voyages are prosecuted
83  with the utmost dispatch. He is to be furnished with free accommodations, and same fare as provided for Captain's table, Charterers paying at the
84  rate of $1.00 *U.S.$ 70.00* per day, Owners to victual Mates and Customs Officers, and also, when authorized by Charterers or their Agents, to victual Tally
85  Clerks, Stevedore's Foreman, etc., Charterers paying at the current rate *U.S.$ 5.00* per meal, for all such victualling.

86  11. That the Charterers shall furnish the Captain from time to time with requisite instructions and sailing directions, in writing, and the
87  Captain shall keep a full and correct Log of the voyage or voyages, which are to be patent to the Charterers or their Agents, and furnish the Char-
88  terers, their Agents or Supercargo, when required, with a true copy of daily Logs *abstract*, showing the course of the vessel and distance run and the con-
89  sumption of fuel. *Master to adhere strictly to Charterers' instructions, give E.T.A. and require N.O.R.*

90  12. That the Captain shall use diligence in caring for the ventilation of the cargo.

91  13. ~~That the Charterers shall have the option of continuing this charter for a further period of~~ ..................
92  .................... ~~by giving written notice thereof to the Owners or their Agents~~ .................... ~~days previous to the expiration of the first named term, or any declared option.~~

93  14. That if required by Charterers, hire not to commence before *See Clause 36 -* .................... and should vessel
94  not have given written notice of readiness on or before *See Clause 25 -* .................... ~~but not later than 4 p.m.~~, Charterers or
95  their Agents to have the option of cancelling this Charter at any time not later than the day of vessel's readiness.

96  15. That in the event of the loss of time from deficiency, *default and/or strike of crew or deficiency of and/or* of men or stores, fire, breakdown
97  or damage to hull, machinery or equipment,
98  grounding, detention by average accidents to ship or cargo, drydocking for the purpose of examination or painting bottom, or by any other cause
99  preventing the full working of the vessel, the payment of hire shall cease for the time thereby lost and if upon the voyage the speed be reduced by
100  defect in or breakdown of any part of her hull, machinery or equipment, the time so lost, and the cost of any extra fuel consumed in consequence
101  thereof, and all extra expenses shall be deducted from the hire

*M/V " SILVER MEI " / AGRENCO - C/P DATED 28TH MAY, 2008*

16. That should the Vessel be lost, money paid in advance and not earned reckoning from the date of loss or being last heard of) shall be returned to the Charterers at once. The act of God, enemies, fire, restraint of Princes, Rulers and People, and all dangers and accidents of the Seas, Rivers, Machinery, Boilers and Steam Navigation, and errors of Navigation throughout this Charter Party, always mutually excepted.

The vessel shall have the liberty to sail with or without pilot, to tow and to be towed, to assist vessels in distress, and to deviate for the purpose of saving life and property.

17. That should any dispute arise between Owners and the Charterers, the matter in dispute shall be referred to *arbitration as per Clause 39* ~~three persons at New York, one to be appointed by each of the parties hereto, and the third by the two so chosen; their decision on that of any two of them shall be final, and for the purpose of enforcing any award this agreement may be made a rule of the Court. The Arbitrators shall be commercial men.~~

18. That the Owners shall have a lien upon all cargoes, and all sub-freights *or sub-hires* for any amounts due under this Charter, including General Average contributions, and the Charterers to have a lien on the Ship for all monies paid in advance and not earned, and any overpaid hire or excess deposit to be returned at once. Charterers will not suffer, nor permit to be continued, any lien or encumbrance incurred by them or their agents, which might have priority over the title and interest of the owners in the vessel.

19. That all derelicts and salvage shall be for Owners' and Charterers' equal benefit after deducting Owners' and Charterers' expenses and Crew's proportion. General Average shall be adjusted, stated and settled, according to Rules 1 to 5, inclusive, 17 to 22, inclusive, and Rule F of York-Antwerp Rules *1994 in London English Law to apply. Charterers hire not to contribute to General Average.* ~~1924, at each port or place in the United States as may be selected by the carrier, and at his option, in New York~~

~~Rules according to the laws and usages of the port of New York.~~ In such adjustment disbursements in foreign currencies shall be exchanged into United States money at the rate prevailing on the dates made and allowances for damage to cargo claimed in foreign currency shall be converted at the rate prevailing on the last day of discharge at the port or place of final discharge of such damaged cargo from the ship. Average agreement or bond and such additional security, as may be received by the carrier, must be furnished before delivery of the goods. Such cash deposit as the carrier or his agents may deem sufficient as additional security for the contribution of the goods and for any salvage and special charges thereon, shall, if required, be made by the goods, shippers, consignees or owners of the goods to the carrier before delivery. Such deposit shall, at the option of the carrier, be payable in United States money and be remitted to the adjuster. When so remitted the deposit shall be held in a special account at the place of adjustment in the name of the adjuster pending settlement of the General Average and refunds or credit balances, if any, shall be paid in United States money.

~~In the event of accident, danger, damage or disaster before or after commencement of the voyage, resulting from any cause whatsoever, whether due to negligence or not, for which, or for the consequence of which, the carrier is not responsible, by statute, contract or otherwise, the goods, the shippers and the consignees, jointly and severally, shall contribute with the carrier in general average to the payment of any sacrifices, losses or expenses of a general average nature that may be made or incurred and shall pay salvage and special charges incurred in respect of the goods. If a salving ship is owned or operated by the carrier, salvage shall be paid for as fully and in the same manner as if such salving ship or ships belonged to strangers.~~

Provisions as to General Average in accordance with the above are to be included in all bills of lading issued hereunder.

20. Fuel used by the vessel while off hire, also for cooking, condensing water, or for grates and stoves to be agreed to as to quantity, and the cost of replacing same, to be allowed by Owners.

~~21. That as the vessel may be from time to time employed in tropical waters during the term of this Charter, Vessel is to be docked at a convenient place, bottom cleaned and painted whenever Charterers and Captain think necessary, at least once in every six months, reckoning from time of last painting, and payment of the dues to be deducted from the hire payment, no responsibility for the service.~~

~~------------------------------------------------~~

~~------------------------------------------------~~

22. Owners shall maintain the gear of the ship as fitted, providing gear (for all derricks capable of handling lifts up to) 3 tons, also providing ropes, falls, slings and blocks. If vessel is fitted with derricks capable of handling heavier lifts, Owners are to provide necessary gear for same, otherwise equipment and gear for heavier lifts shall be for Charterers' account. Owners also to provide on the vessel lanterns and oil for night work, and vessel to give use of electric light when so fitted, but any additional lights over those on hand to be at Charterers' expense. *Owners also to provide free of expense to Charterers sufficient electrical lighting with the vessel's lights, light clusters to permit work at all hatches and as on board at the same time.* ~~The Charterers to have the use of any gear on board the vessel.~~

23. Vessel to work night and day, if required by Charterers, ~~and to work by day and by night during loading and discharging operations to provide one winchman per winch to work whichever day and night as required. Charterers agreeing to pay officers, engineers, winchmen, deck hands and dockmen for overtime work done in accordance with the working hours and rates named in the ship's articles. If Hold(s) of the port, or shore-workers, prevent crew from driving winches, then Charterers to be paid for Charterers' account. In the event of a disabled winch or winches, or insufficient power to operate winches, Owners to pay for time actually lost on this score, or engineers, in the absence of engineers, and pay over loss of time occasioned thereby.~~

24. It is also mutually agreed that this Charter is subject to all the terms and provisions of and all the exemptions from liability contained in the Act of Congress of the United States approved on the 13th day of February, 1893, and entitled "An Act relating to Navigation of Vessels, etc." In respect of all cargo shipped under this charter to or from the United States of America. It is further subject to the following clauses, both of which are to be included in all bills of lading issued hereunder:

General Clause Paramount, New Jason Clause, The Hague Rules or The Hague Visby Rules, Both-to-Blame Collision Clause, Conwartime Clause as attached.

~~Clause Paramount~~

~~This Bill of lading shall have effect subject to the provisions of the Carriage of Goods by Sea Act of the United States, approved April 16, 1936, which shall be deemed to be incorporated herein, and nothing herein contained shall be deemed a surrender by the carrier of any of its rights or immunities or an increase of any of its responsibilities or liabilities under said Act. If any term of this bill of lading be repugnant to said Act to any extent, such term shall to void to that extent, but no further.~~

~~Both-to-Blame Collision Clause~~

~~If the ship comes into collision with another ship as a result of the negligence of the other ship and any act, neglect or default of the Master, mariner, pilot or the servants of the Carrier in the navigation or in the management of the ship, the owners of the goods carried hereunder will indemnify the Carrier against all loss or liability to the other or non-carrying ship or her owners in so far as such loss or liability represents loss of, or damage to, or any claim whatsoever of the owners of said goods, paid or payable by the other or non-carrying ship or her owners to the owners of said goods and set-off, recouped or recovered by the other or non-carrying ship or her owners as part of their claim against the carrying ship or carrier.~~

*M/V " SILVER MEI " / AGREHCO - C/P DATED 28TH MAY, 2008*

167   25. The vessel shall not be required to enter any ice-bound port, or any ~~pre~~ where no lights or light ships have been or are ~~about to be with~~
168   drawn by reason of ice, or where there is a ~~risk~~ that in the ordinary course of things the vessel will not be able on account of ice to ~~safely~~ ~~enter the~~
169   port or to get out after having completed loading or discharging

170   26. Nothing herein stated is to be construed as a demise of the vessel to the Time Charterers. The owners to remain responsible for the
171   navigation of the vessel, *acts of pilots and tugboats*, insurance, crew, and all other matters, same as when trading for their own account

172   27. A commission of *1.25* ~~1.43~~ per cent is payable by the Vessel and Owners to Messrs. *Ifchor S.A., Lausanne*

173
174   an hire earned and paid under this Charter, and also upon any continuation or extension of this Charter.
175   28. An address commission of *1 1/4 3.75* per cent payable to   *Charterers*   ......................... on the hire earned and paid under this Charter.

*Rider Clauses No. 29 - 86 inclusive, as attached, to be considered fully incorporated in this Charter-Party.*

*THE OWNERS :*                                    *THE CHARTERERS :*

This Charter Party is a computer generated copy of the NYPE (Revised 3rd October, 1946) form printed under licence from the Association of Ship Brokers & Agents (U.S.A.), Inc., using software which is the copyright of Strategic Software Limited.

It is a precise copy of the original document which can be modified, amended or added to only by the striking out of original therefrom, or the insertion of new characters, such characters being clearly highlighted by underlining or use of colour or use of a larger font and marked as having been made by the licensee or user as appropriate and not by the author.

M/V " SILVER MEI "

## ADDITIONAL CLAUSES TO SUBJECT CHARTER-PARTY
## DATED LAUSANNE, 25TH MAY, 2006

### Clause 29
#### Husbandry Clause
Charterers are not allowed to deduct Owners' expenses from hire payment because Owners will appoint their own Protective Agents to handle Owners' own matters, unless otherwise agreed by the parties.

### Clause 30
#### Arbitration
All disputes or differences arising out of this contract which cannot be amicably resolved shall be referred to arbitration in London English law to apply.

Unless the parties agree upon a sole arbitrator, one arbitrator shall be appointed by each party, in the case of an arbitration on documents, if the two arbitrators so appointed are in agreement their decision shall be final in all other case the arbitrators so appointed shall appoint a third arbitrator and the reference shall be to the three-man tribunal thus constituted.

If either of the appointed arbitrators refuses to act or is incapable of acting, the party who appointed him shall appoint a new arbitrator in his place.

If one party fails to appoint an arbitrator, whether originally or by way of substitution for two weeks after the other party, having appointed his arbitrator, has (by telex or letter) called upon the defaulting party to make the appointment, the president for the time being of the London Maritime Arbitrators Association shall upon application of the other party, appoint an arbitrator on behalf of the defaulting party and that arbitrator shall have the like powers to act in the reference and make an award (and, if the case so requires, the like duty in relation to the appointment of a third arbitrator) as if he had been appointed in accordance with the terms of the agreement.

This contract is governed by English law and there shall apply to all proceeding under this Clause the terms of the London Maritime Arbitrators Association current at the time when the arbitration proceedings were commenced. All appointees shall be members of the association. (LMAA Arbitration Clause).

Where the amount involved is less than U.S.$ 25,000.- the dispute of difference shall be referred to arbitration according to the L.M.A.A. Small Claims Procedure 1989.

### Clause 31

M/V " SILVER MEI " /AGRENCO – C/P DATED 28TH MAY, 2008

**Boycott**

In the event of the vessel being subjected to boycott, labour, being delayed or rendered inoperative by strikes, labour stoppages or any other difficulties arising from vessel's flag, Ownership, crew or terms of employment of crew of chartered vessel or any other vessel under same Ownership, operation or control, such time lost is to be considered as off-hire.

Owners guarantee that on delivery the minimum terms and conditions of employment of the crew of the vessel will be covered by a contract acceptable to the International Transport Workers Federation, or by a Bona Fide Trade Union agreement acceptable to the International Transport Workers Federation, and will remain so during the duration of the Charter period.

**Clause 32**

**Bunkers**

Bunkers on delivery about 980 – 1,000 metric tons IFO and about 57 metric tons MDO. Bunkers on redelivery about same quantities as actually on board on delivery.

Bunker prices same at both ends : US.$ 625.– per metric ton for IFO and U.S.$ 1,300.– per metric ton for MDO.

Bunkers on delivery are to be paid together with the first hire payment.

Owners to have the privilege to bunker the vessel for their own account prior to redelivery, provided this does not interfere with Charterers' operations.

Charterers have the option to bunker the vessel prior to delivery, provided same not interfering with Owners' discharge operations.

**Clause 33**

**Cargo Exclusions**

Only bulk cargoes are allowed and following to be excluded :

All dangerous, inflammable, injurious, hazardous and corrosive cargoes, goods / commodities as listed in the latest IMDG Code 1994 Consolidated Edition and/or any subsequent modification / amendments thereof, as well as listed on the BC Code Appendix B (but coal is always allowed), acid, alumina, ammonium nitrate, ammonium sulphate, ammunition, arms, asbestos, asphalt, black powder, bones and meatbone meal, borax, bulk milled rice, bulk rice, bulk wheat flour, calcium carbide, calcium hypochlorite, carbon black, caustic soda, cement, cement clinker, charcoal, charcoal in gunny bags, all kinds of concentrates, copra and/or its products, corrosive fertilizers, cotton, creosoted goods, deck cargo, direct reduced iron / HBI / ore briquettes lumps / pellets, dynamite, explosives of any kind including blasting caps and detonators, ferro manganese, ferro-silicon, fishmeal, fluorspar, fuels, grain products for direct human consumption, harmful and logs of any kind, hides, indian coals, livestock, loaded bombs, military equipment and war material of any kind, motor spirits, naptha, no IMO dangerous cargoes, nuclear fuel or substances or radioactive material of any kind and / or their wastes, petroleum coke except non-hazardous

M/V " SILVER MEI " /AGRENCO – C/P DATED 28TH MAY, 2008

/ non-dangerous green delayed or calcined non-oily type, petroleum or its products, pig iron, pitch, pyrites, ore pellets, overweight cargo, pitch in bulk or drums, quebracho extracts, quick lime, railway wagons, resin, salts, salt cake, sand, silica sand, rutile, ilmenite, synthetic rutile, eucoxene, podiumene sands, scrap including motor blocks and turnings, metal boring and cuttings, all seed cakes including mechanically expelled and/or solvent-extracted meals / pellets / expellers, shavings, silicon manganese, sludge ore, soda ash, sponge iron/pre-reduced iron, sugar and/or raw sugar, sulphur, sunflower seed expellers, tar, TNT, tobacco, turpentine, waste paper, wet hides, zinc ashes, zircon sands, the cargo of which the nature could affect the safety of vessel, crew and cargo loaded board and cargo which requires lashing / securing / dunnage including steel products.

In any circumstances, vessel is not allowed to sail in loaded condition with any empty cargo hold(s) except for the voyages where two or more loading/discharging ports/places in same area.

It is understood that the loading ports in Argentina / Brazil are considered in same area.

In such case, it has to comply with the structural strength requirements in SOLAS Reg. XII/14, SOLAS REG XII/5.1 and the standards and criteria for side structures of bulk carriers of single skin construction, RES. MSC. 168 (79) and always to meet Master's discretion.

Clause 34
Throughout the period of the Charter Party, the vessel to be in possession of all necessary valid equipment and certificates to comply with safety and health regulations, National and International regulations, and all current requirements at all ports of call, Panama and Suez Canal included.

Owners guarantee vessel is fully fitted for loading of grain according to Solas Regulations.

Vessel to be gearless self-trimming single deck bulk carrier and engine/bridge aft.

Vessel is fully ITF fitted or equivalent.

Owners guarantee vessel is entered with P. and I. Club and her P. and I. Club is a member of the International Group of P. and I. Clubs and Owners guarantee vessel's class is a member of IACS and vessel will remain so fully covered for liabilities normally covered by P. and I. cover throughout the duration of this Charter Party.

Owners guarantee vessel holding valid Certificate of Financial Responsibility and International Tonnage Certificate during the entire Charter Party period.

Owners warrant vessel is in all respects eligible for trading to the ports, places or countries specified in Charter-Party and that at all necessary times the vessel and/or Owners shall have valid certificates records or other documents required for such trade.
Clause 35

M/V " SILVER MEI " /AGRENCO – C/P DATED 28TH MAY, 2008

Communications/Representation

Charterers are to reimburse Owners for cost of entertainment / cables / victualling communications, also representation expenses incurred on Charterers behalf, by payment of a lumpsum of U.S.$ 1250.- per 30 days or pro-rata to be settled together with hire over corresponding periods.

N.B. above communication / representation expenses not to be confounded with meals/superintendents etc. as per Clause 10.

Clause 36

Laycan

29th May, 2008 - 00.01 hours / 31st May, 2008 - 12.00 hours (local time)

Clause 37

Delivery

Owners warrant that vessel's holds on arrival first loadport to be clean, swept, washed down and dried up in respect to receive Charterers' intended cargo and should pass the independent surveyor's inspection. If vessel fails to pass hold inspection, vessel to be put off-hire from the time of failure of cargo hold inspection until passing re-inspection and any directly related expenses if any incurred thereby to be for Owners' account.

Clause 38

Delivery-Notices

Owners to give delivery notice upon fixing.

Clause 39

Vessel's Description :

M/V " SILVER MEI "

Hong Kong / 1989, Class CCS, single deck, bulk-carrier
69,676 MTDW on 13.292 meters SSW
Loa / Beam 224 meters / 32.2 meters
GT/NT 36720 / 23035
Grain capacity 81337 CBM
7 Holds / Hatches, gearless
TPC on Summer draft - about 54 MT
Grain breakdown :
9528/12219/12105/12123/12175/12099/11988 – Total 81337 CBM
Hatch size :      No.1 /        14.4 x 12.8 meters
                  No.2-7/      17.6 x 14.4 meters

Speed / consumption :
about  13.0 knots on about 24.50 MT IFO (180CST) + 0.1 MT MDO (ballast)
about  12.5 knots on about 25.50 MT IFO (180CST) + 0.1MT MDO (laden)
In calm sea and fair weather with wind speed up to and including Beaufort Scale Wind Force 4 and Douglas Sea State 3.

-4-

Lennon, Murphy & Lennon LLC

M/V "SILVER MEI" /AGRENCO – C/P DATED 28TH MAY, 2008

| In port | idle: | 1.3 MT IFO + 1.5MT MDO |
| | working: | 1.8 MT IFO + 1.5MT MDO |
| Bunker spec | IFO – ISO 8217 RME25 (2005E) | |
| | MDO – ISO 8217 DMB (2005E) | |

Vessel has liberty to consume MDO while manoeuvering, in / out of ports, starting / standby
of engines, navigationg in shallow / restricted / busy waters, canals and rivers ;

No alternate hold loading is allowed ;

If load packed cargo such as steel mill products, then No.1 hold should be restricted not
more than 8,195 MT according vessel's limits of strength.

All details about and ate given in good faith

- Owners' style :
  Southern Shipping Management Co., Ltd
  c/o China Shipping (H.K.) Marine Co., Ltd, as agents

- Charterers' style :
  Agrenco Madeira.Comercio Internacional Lda
  Avenida do Infante, 50 Funchal
  9004-521 – Ilha da Madeira
· Portugal

## Clause 40
### Delivery cargo without produces Bills of Lading
If original Bill(s) of Lading do not arrive at the discharge port prior to vessel's arrival,
Owners / Master agree to discharge the entire cargo without presentation of the original
Bill(s) of Lading against Charterers' signed Letter of Indemnity in Owners' P. and I. Club
format.

## Clause 41
### Deviation
Should the vessel deviate or be put into any port other than those instructed by the
Charterers by reason of accident or breakdown or for the purpose of landing any injured or
sick officer, including the Master or members of the crew, the port charges, pilotage, bunker
consumption and other expenses, including loss of time, shall be borne by Owners, and
should the vessel put back whilst on voyage by any of the above mentioned reasons, the hire
shall be suspended from time of her putting back until she is again in the same or
equidistant position and her voyage resumed therefrom.

## Clause 42
All negotiations and eventual fixture to be kept strictly private and confidential.
## Clause 43
### Fumigation

Lennon, Murphy & Lennon LLC

M/V " SILVER MEI " /AGRENCO – C/P DATED 25TH MAY, 2008

Owners to supply on delivery, and to maintain during the service, valid deratization or deratization exemption certificate, the cost of any fumigation necessary to obtain extensions or renewals of deratization certificate to be for Owners' account and time required to be off-hire. Fumigation of cargo to be in accordance with flag state regulation IMO recommendations.

### Clause 44
#### Gangway

Where vessel's accommodation ladder cannot be used due to particular berth construction, shore gangway rental shall be for Charterers account. Where shore gangway is necessary due to vessel's accommodation ladder being out of order, rental shall be for Owners' account.

### Clause 45
#### Grab discharge

Vessel is guaranteed suitable for grab discharge and buildozers work in holds, weight of which not to exceed tank-top strength.

### Clause 46
#### Hire Rate(s)

U.S.$ 83.500 – daily, including overtime,

Hire always per day or pro rata, less commission, to be paid every 15 days in advance ;

First hire of 15 days plus bunkers on board on delivery to be paid to Owners' nominated bank account within 3 (three) banking days after vessel's delivery.

In lieu of hold cleaning on redelivery U.S.$ 4750.-lumpsum.

Hire and all monies due to the Owners under this Charter-Party will be paid to Owners' bank account, details as below. Charterers will not agree to the assignment of hire, monies due under this Charter-Party, or the Charter-Party itself in any circumstances whatsoever.

Hire payable by swift transfer to :

Owner's full banking details :

| | |
|---|---|
| Account Name : | BO CHUAN SHIPPING S.A. |
| Account No. : | 61287571 |
| Bank Name : | CITIBANK NA HONG KONG |
| SWIFT Code : | CITIHKHX |
| Reference : | MV SILVER MEI / AGRENCO CP DD 29/05/08 |

### Clause 47
Deleted.

- 6 -

Lennon, Murphy & Lennon LLC

M/V " SILVER MEI " /AGRENCO – C/P DATED 29TH MAY, 2008

#### Clause 48
##### Ice
Any ice-bound place or any place or any place where lights, lightships, marks and buoys are or are likely to be withdrawn by reason of ice on the vessel's arrival or where there is risk that ordinarily the vessel will not be able on account of ice to reach the place or to get out after having completed loading or discharging, the vessel not to be obliged to force ice, if on account of ice the Master considers it dangerous to remain at the loading or discharging place for fear of the vessel being frozen in and/or damaged, he has liberty to sail to a convenient open place and wait the Charterers' fresh instructions.

Unforeseen detention through any of above causes to be for Charterers' account.

#### Clause 49
##### Insurance
Charterers to have the benefit of any return of insurance premium receivable by the Owners from Underwriters (as and when received from Underwriters) by reason of vessel being in port for a minimum of 30 days provided vessel is on-hire.

Owners to maintain full P. and I. cover including pollution cover with West of England, Charterers have the benefit of Owners' entry with their P. & I. Club, as far as the rules of the Association permit.

Additional premium Clause (including but not limited to passing / transiting / calling Malacca Strait and Sulu Archipelago) :
Subject to Owner's War Risk Underwriter's prior approval, Charterers have the option to break respectively war risk trading warranties during this Charter and any/all additional premium including blocking, trapping and crew war risk bonus (if applicable due to break war risk trading warranties, the same below) for trading to areas in breach of warranties to be for Charterers' account.

But under this Charter, Charterers must unfail to pay the said additional premium and crew war risk bonus in advance, i.e. Charterers to pay the first period (covering the first 7 days) additional premium and crew war risk bonus in advance (latest before vessel's arrival at the applicable loading or disport(s) limits) to Owners' nominated bank account, and Charterers to pay the 2nd period (if applicable) additional and crew war risk bonus from the very beginning of the 8th day and so on.

Charterers' above payment in advance should against Owners' Underwriter's quotation of additional premium and Owners' calculation of crew war risk bonus only and without any invoices which will only be available after vessel's completion of loading or discharging and sailed out from applicable loading or disport(s).

If Charterers fail to pay said additional premium and crew war risk bonus in advance as above, then Owners will not allow the vessel to enter applicable loading or disport(s) limits and all any consequences / loss / responsibilities and/ or expenses incurred therefrom to be

-7-

Lennon, Murphy & Lennon, LLC

M/V " SILVER MEI "/AGRENCO – C/P DATED 28TH MAY, 2008

for Charterers' sole account.

Clause 50
Itinerary
Charterers undertake to keep Owners or Master fully informed during the period of the Charter as regards the itinerary of the vessel and the names and full styles of their agents at ports of call whenever so required by Owners.

Clause 51
Off-hire
Should the vessel be off-hire Charterers have the option of extending the Charter Party by an equivalent number of days declarable minimum 30 (thirty) days prior the earliest date of redelivery and should the vessel be subsequently off-hire Charterers to declare their option upon vessel re-entering service.

If the vessel is off-hire for more than 30 (thirty) consecution days, Charterers to have the right of cancelling the remaining period of this Charter Party.

Clause 52
On-/Off-Hire Surveys
A joint on/off-hire survey for the purpose of determining vessel's condition/equipment and bunker quantity on delivery and redelivery to be held at first loading port/at last discharging port prior to delivery and redelivery. Time used in and costs of such surveys to be equally shared between owners and Charterers.

If no time lost to Charterers, Charterers not to deduct survey time from hire.

Clause 53
Opening/Closing of Hatches
All hatch opening and closing to be done by vessel's crew for Owners' account unless port regulation prohibit same, in which case shore labour to be for Charterers' account.

Vessel's hatch covers are and remain during the currency of this Charter Party in proper condition and in watertight, otherwise any time loss and/or expenses incurred in the event of workers at any time refusing to handle the vessel due to inadequacy of hatch covers to be for Owners' account.

Clause 54
Pollution Regulations
Owners warrant that during the currency of this Charter party the Owners to comply fully with the U.S. Federal water pollution control act, any rules and/or regulations issued thereunder and amendments thereto and any legislation enacted with respect to pollution of sea waters by oil or any other substances (including any rules and/or regulations issued thereunder) by any government department thereof or other authorities and also any similar legislation enforced by any nations of the world. Should any delay or detention of the vessel

-8-

Lennon, Murphy & Lennon LLC

M/V "SILVER MEI "/AGRENCO – C/P DATED 28TH MAY, 2008

occur from failure by Owners to comply with the said act, law rules, regulations or legislation, the hire shall cease for the period of such delay, or detention, Owners hereby accept responsibility for and agree to indemnify Charterers against all claims, liabilities, costs (including legal fees) and all consequences which result from failure by Owners to comply with the said act, rules, regulations or legislation.

It is understood that Owners will not be considered to be in default of any of the provision of this clause where they are not able to produce certificates of Financial Responsibility in respect of oil pollution legislation which are not obtainable from the International Group of P. and I Club under standard conditions of cover.
Certificate of Financial Responsibility for oil pollution to be on board throughout the Charter period.

## Clause 55
### Redelivery
On dropping last outward sea pilot one safe port Skaw / Passero range including Adriatic or in Charterers' option passing same Westbound, port in Charterers' option, at any time day or night Sundays and holidays included.

## Clause 56
"NAABSA" is allowed at grain loading berths only in River Plates at Argentina, Brazil at such places where are customary for similar size of vessel to safely lie aground which to be always at Charterers' risks and time and expenses and subject to be permissible / prevailing draft at the River Plate / Brazil declared by port authorities / pilots.

## Clause 57
### Requisitioning
Should the vessel be requisitioned by the government of the vessel's flag during the period of the Charter, the vessel shall be deemed to be off-hire during the period of such requisition, and any hire paid by the said government in respect of such requisition period shall be retained by Owners, the period during which the vessel is on requisition to the said Government shall count as part of the period provided for in this Charter.

## Clause 58
### Signing Bills of Lading
Charterers and/or their Agents are authorised to sign Bills of Lading on Owners'/Master's behalf in accordance with Mate's receipts. Charterers shall remain responsible and indemnify Owners against all consequences or liabilities which may arise from any inconsistency between this charter and any Bills of Lading issued hereunder, also from Charterers or their agents signing Bills of Lading which are not in conformity with mate's receipts.

## Clause 59
### Smuggling

Lennon, Murphy & Lennon LLC

M/V " SILVER MEI " /AGRENCO – C/P DATED 28TH MAY, 2008

Any delay, expenses or fines incurred on account of smuggling, if caused by the Charterers' servants are to be for Charterers' account. If caused by the Officers and crews to be for Owners' account.

## Clause 60
### Stevedore Damages

Any damage caused by stevedores during the currency of this charter shall be reported by Captain to Charterers or their agents, in writing within 24 hours of the occurrence or as soon as possible thereafter. The Captain shall use his best efforts to obtain written acknowledgement by responsible parties causing damage unless damage should have been made good in the meantime.

Stevedore damages involving seaworthiness shall be repaired without delay to the vessel after each occurrence in Charterers' time and shall be paid for by the Charterers other minor repairs shall be done at the same time, but if this is not possible, same shall be repaired while vessel is in dry-dock in Owners' time provided this does not interfere with Owners' repair work, or by vessel's crew at Owners' convince. All costs of such repairs shall be for Charterers' account. Any time in repairing stevedores damage which cannot be repaired during Owners' dry-dock time, shall be for Charterers' account.

## Clause 61

Owners / Master to adhere the instruction of independent Weather Service Company WNI Oceanroutes and treat their calculation on speed / consumption as final and binding.

## Clause 62
### Top-off and Lightening Operations

Charterers shall have the right to top-off or lighten the vessel using other vessels or craft at any safe dock, wharf or anchorage within port limits, such operation to be carried out always under the supervision of the Master regarding general safety, who may at any time order the other vessel or craft away or remove his own vessel. Charterers to take normal customary precautions for such operations, including adequate fendering trading operations which entail cargo loading or discharging outside port limits to be considered only if sufficient notice has been to and approval obtained from Owners, respectively Hull Underwriters.

Charterers to indemnity Owners for any damages to vessel, loss of hire, extra insurance premiums and deductibles resulting from such operations.

## Clause 63
### Trading Exclusion

World wide trading via safe anchorage (s), safe berth(s), safe port(s), always afloat, always accessible, always within IWL, warranted not in breach of United Nations sanctions and excluding:
Albania, Israel or Israeli controlled countries/areas, Algeria, Libya (including Gulf of Sidra/Sirte), former Yugoslavia (except Bakar, Koper, Rijeka and Ploce), Lebanon, Syria,

Lennon, Murphy & Lennon LLC

## M/V "SILVER MS" /AGRENCO - C/P DATED 28TH MAY, 2008

Turkish occupied Cyprus, Cyprus, the Coast ports of and sea of Azov including Kerchensky Strait, Georgia (including Abkhazia), Jordan, Gulf of Aqaba, Iran, Iraq, Kuwait, Saudi Arabia, Bahrain, Qatar, UAE, Oman, Yemen, Pakistan, Bangladesh, Sri Lanka, Sudan, Eritrea, Djibouti, Somalia, Kenya, Mozambique, Madagascar, Namibia, Angola (including Cabinda), Democratic Republic of Congo (formerly Zaire), Equatorial Guinea, Nigeria and the Bakassi Peninsular, Benin, Ivory Coast, Liberia, Sierra Leone, Guinea except Kamsar, Guinea-Bissau, Barents Sea including Kola Bay, Iceland, Murmansk, Norway, Denmark, Sweden, Finland, Great Lakes, River Amazon, River Orinoco, Alaska, River St. Lawrence out of Season (permitted in season only), Cuba, Haiti, Belize, Honduras, Nicaragua, Costa Rica, El Salvador, Guatemala, Suriname, Kiribati, Solomon Islands, Nauru, Cambodia, North Korea, Pacific Russian / C.I.S. / Siberian ports including Sakhalin Island, Magellan Strait, no direct calling between Taiwan and P.R.C., war and war-like zones and other countries having hostilities with vessel's flag, places which may be excluded by authority of vessel's flag.

Any ice-bound port(s) where vessel will not be able to reach or leave after and/or before loading and/or discharging.

Vessel not to force ice and not to follow ice breaker under any circumstance.

### Clause 64
#### War Cancellation
In the event of the outbreak of war (whether there be a declaration of war or not) between any two or more of the following countries; the United States of America, the United Kingdom, France, the former Union of Soviet Socialist Republics, The People's Republic of China, Taiwan or in the event of the nation under whose flag the vessel sails becoming involved in war (whether there be a declaration of war or not), either the Owners or the Charterers may cancel this Charter, whereupon the Charterers shall redeliver the vessel to the owners in accordance with Clause 4 if she has cargo on board, after discharge thereof at destination, or, if debarred under this Clause from reaching or entering it, at a near open and safe port as directed by the Owners if she has no cargo on board, at the port at which she then is, or, if at sea, at a near open and safe port as directed by the Owners. In all cases hire shall continue to be paid in accordance with Clause 4 and except as aforesaid all other provisions of the Charter shall apply until redelivery.

### Clause 65
#### Asian Gypsy Moth Clause
Owners confirm that in the last 12 months the vessel has not called at Russian Far East ports ranging from Posyet to Olgo Bay, including Vladivostock, Nakhodka and Vostochniy during the months of June through September and that there is no danger of the vessel being rejected entry and/or being delayed by the U.S. authorities in this case, however, does occur Charterers have the right to instruct the vessel to clean and present with all time/expenses till the vessel is accepted being for Owners' account.

Owners warrant the vessel has not traded Asian Gypsy Moth affected area/CIS Pacific ports

Lennos, Murphy & Lennon LLC

M/V " SILVER MEI " /AGRENCO – C/P DATED 29TH MAY, 2008

and is not blacklisted by Arab countries. Owners confirm vessel has never called. C.I.S. Pacific ports and free from Asian Gypsy moths. failing which all consequences/time to be for Owners' account.

## Clause 66
### Watchmen
Watchmen hired from shore for cargo to be for Charterers account. for vessel to be for Owners' account provided specifically ordered by Master. Compulsory watchmen to be for Charterers account.

## Clause 67
Cargo claims, if any, under this charter party to be settled between Owners and Charterers in accordance with the NYPE Interclub agreement and any subsequent modifications thereby.

## Clause 68
Vessel has liberty to use MDO when manoeuvring in/out of ports, navigating in shallow / restricted / busy waters, channels, canal, rivers and any starting and stopping of aux. engines.

## Clause 69
Any taxes levied on cargo or sub-freight or sub-hire earned by Charterers to be for Charterers account. Any taxes on hire earned to head Owners, to be for Owners account.

## Clause 70
### Ocean Route Clause
Charterers may supply ocean route's advice to the Master. Basically, the Master to comply with the reporting procedure of the routing service, but if under adverse weather conditions, the Master has the power of final decision at his own discretion. Evidence of weather conditions to be taken from the vessel's deck logs and independent weather bureau report. In case of discrepancies between the deck logs and ocean route report, then ocean routes report to be as final and binding. Charterers can only appoint the 'Weather News Inc' (also known as 'WNI Oceanroutes') under this Charter and during the entire Charter period.

## Clause 71
### Bimco Standard Year 2000 Clause for Voyage and Time Charter Parties
Year 2000 conformity shall mean that neither performance nor functionality of computer systems, electronic and electro-mechanical or similar equipment will be affected by dates prior to or during the Year 2000 without prejudice to their other rights, obligations and defences under this Charter Party including, where applicable, those of the Hague or Hague-Visby Rules, the Owners and the Charterers, and in particular the owners in respect of the vessel, shall exercise due diligence in ensuring Year 2000 conformity in so far as this has a bearing on the performance of this Charter Party.

## Clause 72

Ŷ.    Lennon, Murphy & Lennon LLC

M/V " SILVER MEL " /AGRENCO – C/P DATED 25TH MAY, 2008

All documents / certificate to be valid / kept onboard by Owners including compliance with ISM (International Safety Management) regulations carrying an accredited SMS / ISM Certificate issued by international recognised Classification Society.

**BIMCO ISM Clause**
From the date of coming into force of the International Safety Management (ISM) code in relation to the vessel and thereafter during the currency of this Charter Party, The Owners shall procure that the vessel and "The Company" (as defined by the ISM code) shall comply with the requirements of the ISM Code.
Upon request The Owners shall provide a copy of the relevant document of compliance (DOC) and safety management certificate (SMC) to the Charterers. Except as otherwise provided in this Charter Party, loss, damages, expense or delay caused by failure on the part of the Owners of "The Company" to comply with the ISM Code shall be for the Owners' account.

**Clause 73**
Normal quarantine time and expenses for entering port(s) to be for Charterers' account.

**Clause 74**
Any tax levied by country of vessel's registry to be for Owners account, any/all other taxes to be for Charterers' account except for taxes that are on the vessel.

**Clause 75**
Delivery/redelivery time to be basis on local time. For purpose of computing Charter hire, delivery and redelivery time to be converted to GMT.

**Clause 76**
Cargo separation other than by hold to be at Charterers' time / risks and expenses.

**Clause 77**
Charterers to leave the vessel in seaworthy trim and with cargo on board safely stowed to Master's satisfaction and discretion when shifting / sailing between loading ports / berths / anchorages and between discharging ports / berths / anchorages.

**Clause 78**
It is understood that if the rider clauses, as attached, conflict with the printed provisions of the Charter Party (including amendments) then Rider Clauses are to apply.

**Clause 79**
**Long Port Stay Clause**
If Charterers order the vessel to remain at the same areas such as the same port or the same river where she stays for more than 30 consecutive days, then any representation of the vessel's speed and consumption shall cease to be applicable and Owners will be not responsible for any speed and/or consumption claims for the entire Charter period due to marine growth.

Lennon, Murphy & Lennon LLC

M/V " SILVER MEI " /AGRENCO – C/P DATED 28TH MAY, 2008

## Clause 80
### Recommended Pilotage Clause
Charterers to pay the pilotage of Danish Strait and Bosporus Strait due to it is strongly recommended by relative port authorities.

## Clause 81
### Split Bills of Lading Clause
Charterers and/or Agents are hereby authorised by Owners/Master to split Bills of Lading and issue ship delivery orders in negotiable and transferable forms against collection of full set of original Bills of Lading.

Delivery orders to conform with all terms and conditions and exceptions of Bills of Lading and shall not prejudice shipowner's rights.

## Clause 82
Deleted.

## Clause 83
### Bunker Quality Control Clause for Time Charterers

1)   The Charterers shall supply bunkers of a quality suitable for burning in the Vessel's engines and auxiliaries and which conform to the specification(s) mutually agreed under this Charter.

2)   At the time of delivery of the Vessel the Owners shall place at the disposal of the Charterers, the bunker delivery note(s) and any samples relating to the fuels existing on board.

3)   During the currency of the Charter the Charterers shall ensure that bunker delivery notes are presented to the Vessel on the delivery of fuel(s) and that during bunkering representative samples of the fuel(s) supplied shall be taken at the Vessel's bunkering manifold and sealed in the presence of competent representatives of the Charterers and the Vessel.

4)   The fuel samples shall be retained by the Vessel for 90 (ninety) days after the date of delivery or for whatever period necessary in the case of a prior dispute and any dispute as to whether the bunker fuels conform to the agreed specification(s) shall be settled by analysis of the sample(s) by DNV or by another mutually agreed fuels analyst whose findings shall be conclusive evidence as to conformity or otherwise with the bunker fuels specification(s).

5)   The Owners reserve their right to make a claim against the Charterers for any damage to the main engines or the auxiliaries caused by the use of unsuitable fuels or fuels not complying with the agreed specification(s). Additionally, if bunker fuels supplied do not conform with the mutually agreed specification(s) or otherwise prove unsuitable for burning in the ship's engines or auxiliaries the Owners shall not

- 14 -

Lenton, Murphy & Lennon LLC

M/V " SILVER MET " /AGRENCO – C/P DATED 28TH MAY, 2008

be held responsible for any reduction in the Vessel's speed performance and/or increased bunker consumption nor for any time lost and any other consequences.

Clause 84
Deleted.

Clause 85
Seaway Bill Clause
Charterers and/or their agents may alternatively issue and sign non-negotiable Sea Waybills in lieu of Bills of Lading for those Shippers with whom Charterers have contracts allowing or requiring Sea Waybills to be used and cargo to be released at discharging port(s) smoothly without presentation of the documents to Master.

Charterers hereby indemnify Owners and hold them harmless in respect of any liability, loss, damage or expenses by reason of the cargo being so delivered by Sea Waybill.

Clause 86
No dry-dock except in case of emergency.

*** end ***

Lennon, Murphy & Lennon LLC

## BOTH TO BLAME COLLISION CLAUSE "

If the liability for any collision in which the vessel is involved while performing this Charter-Party fails to be determined in accordance with the laws of the United States of America, the following Clause shall apply :

### BOTH TO BLAME COLLISION CLAUSE

If the ship comes into collision with another ship as a result of the negligence of the other ship and any act, neglect or default of the Master, Mariner, Pilot or the Servants of the Carrier in the navigation or in the management of the ship, the Owners of the goods carried hereunder will indemnify the Carrier against all loss or liability to the other or non-carrying ship or her Owners in so far as such loss or liability represents loss of or damage to or any claim whatsoever of the Owners of the said goods, paid or payable by the other or non-carrying ship or her Owners to the Owners of the said goods and set-off, recouped or recovered by the other or non-carrying ship or her Owners as part of their claim against the carrying ship or Carrier.

The foregoing provisions shall also apply where the Owners, operators or those in charge of any ship or ships or objects other than, or in addition to, the colliding ships or objects are at fault in respect of a collision or contact".

### GENERAL AVERAGE AND THE NEW JASON CLAUSE

General Average shall be payable according to the York/Antwerp Rules, 1974, as amended 1990, but where the adjustment is made in accordance with the law and practice of the United States of America, the following clause shall apply :

### THE NEW JASON CLAUSE

In the event of accident, danger, damage or disaster before or after the commencement of the voyage, resulting from any cause whatsoever, whether due to negligence or not, for which, or for the consequences of which, the Carrier is not responsible, by statute, contract, or otherwise, the goods, Shippers, Consignees, or Owners of the goods shall contribute with the Carrier in general average to the payment of any sacrifices, losses or expenses of a general average nature that may be made or incurred, and shall pay salvage and special charges incurred in respect of the goods.

If a salving ship is owned or operated by the Carrier, salvage shall be paid for as fully as if the said salving ship or ships belonged to strangers. Such deposit as the Carrier or his Agents may deem sufficient to cover the estimated contribution of the goods and any salvage and special charges thereon shall, if required, be made by the goods, Shippers, Consignees or Owners of the goods to the Carrier before delivery."
And the Charterers shall procure that all Bills of Lading issued under this Charter-Party shall contain the same Clause.

Lennon, Murphy & Lennon LLC

## GENERAL CLAUSE PARAMOUNT

It is hereby mutually agreed that all Bills of Lading issued pursuant to this Charter Party shall bear the following Clauses :

"All terms provisions and conditions of the rules contained in the International Convention for the Unification of certain rules relating to Bills of Lading dated Brussels the 25th August 1924 (commonly known as The Hague Rules) shall apply to the contract in this Bill of Lading, but if in the country of shipment or delivery of the cargo any special law has been enacted in order to incorporate the rules of the said Convention then all the terms, provisions and conditions of the said Convention with and subject to such modifications and additions, if any as, are imposed by such special law shall apply. Nothing herein contained shall be deemed to be a surrender by the carrier of any of its rights or immunities or an increase of any of its responsibilities under the said Rules or Enactments.

The carrier is to entitled to the benefit of all such privileges, rights and immunities as are contained in the said Rules or Enactments, it shall to the extent of such inconsistency and no further be null and void."

## WAR RISKS CLAUSE FOR TIME CHARTERS, 2004
## (CODE NAME: CONWARTIME 2004)

(a)    For the purpose of this Clause, the words:

(i)    "Owners" shall include the shipowners, bareboat Charterers, disponent Owners, Managers or other operators who are charged with the management of the Vessel, and the Master; and

(ii)    "War Risks" shall include any actual, threatened or reported:

war; act of war; civil war; hostilities; revolution; rebellion; civil commotion; warlike operations; laying of mines; acts of piracy; acts of terrorists; acts of hostility or malicious damage; blockades (whether imposed against all vessels or imposed selectively against vessels of certain flags or ownership, or against certain cargoes or crews or otherwise howsoever); by any person, body, terrorist or political group, or the Government of any state whatsoever, which, in the reasonable judgement of the Master and/or the Owners, may be dangerous or are likely to be or to become dangerous to the Vessel, her cargo, crew or other persons on board the Vessel.

(b)    The Vessel, unless the written consent of the Owners be first obtained, shall not be ordered to or required to continue to or through, any port, place, area or zone (whether of land or sea), or any waterway or canal, where it appears that the Vessel, her cargo, crew or other persons on board the Vessel, in the reasonable judgement of the Master and/or the Owners, may be, or are likely to be, exposed to War Risks. Should the Vessel be within any such place as aforesaid, which only becomes dangerous or is likely to be or to become dangerous, after her entry into it, she shall be at liberty to leave it.

(c)    The Vessel shall not be required to load contraband cargo, or to pass through any blockade, whether such blockade be imposed on all vessels, or is imposed selectively in any way whatsoever against vessels of certain flags or ownership, or against certain cargoes or crews or otherwise howsoever, or to proceed to an area where she shall be subject, or is likely to be subject to a belligerents' right of search and/or confiscation.

Lennon, Murphy & Lennon LLC

(d)     (i) The Owners may effect war risks insurance in respect of the Hull and Machinery of the
Vessel and their other interests (including, but not limited to, loss of earnings and detention,
the crew and their protection and Indemnity Risks), and the premiums and/or calls therefor
shall be for their account.

(ii) If the Underwriters of such insurance should require payment of premiums and/or calls
because, pursuant to the Charterers' orders, the Vessel is within, or is due to enter and remain
within, or pass through any area or areas which are specified by such Underwriters as being
subject to additional premiums because of War Risks, then the actual premiums and/or calls
paid shall be reimbursed by the Charterers to the Owners at the same time as the next
payment of hire is due, or upon redelivery, whichever occurs first.

(e)     If the Owners become liable under the terms of employment to pay to the crew any bonus or
additional wages in respect of sailing into an area which is dangerous in the manner defined
by the said terms, then the actual bonus or additional wages paid shall be reimbursed to the
Owners by the Charterers at the same time as the next payment of hire is due, or upon
redelivery, whichever occurs first.

(f)     The Vessel shall have liberty:-
(i) to comply with all orders, directions, recommendations or advice as to departure, arrival,
routes, sailing in convoy, ports of call, stoppages, destinations, discharge of cargo, delivery,
or in any other way whatsoever, which are given by the Government of the Nation under
whose flag the Vessel sails, or other Government to whose laws the Owners are subject, or
any other Government, body or group whatsoever acting with the power to compel
compliance with their orders or directions;

(ii) to comply with the order, directions or recommendations of any war risks underwriters
who have the authority to give the same under the terms of the war risks insurance;

(iii) to comply with the terms of any resolution of the Security Council of the United Nations,
the effective orders of any other Supranational body which has the right to issue and give the
same, and with national laws aimed at enforcing the same to which the Owners are subject,
and to obey the orders and directions of those who are charged with their enforcement;

(iv) to discharge at any other port any cargo or part thereof which may render the Vessel
liable to confiscation as a contraband carrier;

(v) to call at any other port to change the crew or any part thereof or other persons on board
the Vessel when there is reason to believe that they may be subject to internment,
imprisonment or other sanctions.

(g)     If in accordance with their rights under the foregoing provisions of this Clause, the Owners
shall refuse to proceed to the loading or discharging ports, or any one or more of them, they
shall immediately inform the Charterers. No cargo shall be discharged at any alternative port
without first giving the Charterers notice of the Owners' intention to do so and requesting
them to nominate a safe port for such discharge. Failing such nomination by the Charterers
within 48 hours of the receipt of such notice and request, the Owners may discharge the
cargo at any safe port of their own choice.

(h)     If in compliance with any of the provisions of sub-clauses (b) to (g) of this Clause anything is
done or not done, such shall not be deemed a deviation, but shall be considered as due

Lennon, Murphy & Lennon LLP

M/V "SILVER MEI"/AGRENCO – C/P DATED 29TH MAY, 2008

fulfilment of this Charter Party.

Lennon, Murphy & Lennon LLC

## BIMCO U.S. CUSTOMS ADVANCE NOTIFICATION / AMS CLAUSE
## FOR TIME CHARTER PARTIES

(a)   If the vessel loads or carries cargo destined for the U.S. or passing through U.S. ports in transit, the Charterers shall comply with the current U.S. Customs Regulations (19 CFR 4.7) or any subsequent amendments thereto and shall undertake the role of carrier for the purposes of such regulations and shall, in their own name, time and expense :

i)   Have in place a SCAC (Standard Carrier Alpha Code);

ii)   Have in place an ICB (International Carrier Bond);

iii)   Provide the Owners with a timely confirmation of i) and ii) above; and

iv)   Submit a cargo declaration by AMS (Automated Manifest System) to the U.S. Customs and provide the Owners at the same time with a copy thereof.

(b)   The Charterers assume liability for and shall indemnify, defend and hold harmless the Owners against any loss and/or damage whatsoever (including consequential loss and/or damage) and/or any expenses, fines, penalties and all other claims of whatsoever nature, including but not limited to legal costs, arising from the Charterers' failure to comply with any of the provisions of sub-clause (a). Should such failure result in any delay then, notwithstanding any provision in this Charter-Party to the contrary, the vessel shall remain on hire.

(c)   If the Charterers' ICB is used to meet any penalties, duties, taxes or other charges which are solely the responsibility of the Owners, the Owners shall promptly reimburse the Charterers for those amounts.

(d)   The assumption of the role of carrier by the Charterers pursuant to this Clause and for the purpose of the U.S. Customs Regulations (19 CFR 4.7) shall be without prejudice to the identity of carrier under any Bill of Lading, other contract, law or regulation.

## ISPS/MTSA CLAUSE FOR TIME CHARTER PARTIES 2005

(a)   (i)   The Owners shall comply with the requirements of the International code for the security of ships and of port facilities and the relevant amendments to Chapter XI of Solas (ISPS Code) relating to the vessel and the company (as defined by the ISPS Code). If trading to or from the United States or passing through United States waters, the Owners shall also comply with the requirements of the US Maritime Transportation Security Act 2002 (MTSA) relating to the vessel and the Owner (as defined by the MTSA).

(ii)   Upon request the Owners shall provide the Charterers with a copy of the relevant International Ship Security Certificate (or the Interim International Ship Security Certificate) and the full style contact details of the company security officer (CSO).

(iii)   Loss, damages, expense or delay (excluding consequential loss, damages, expense or delay) caused by failure on the part of the Owners or the company / Owner to comply with the requirements of the ISPS Code / MTSA or this Clause shall be for the Owners account, except as otherwise provided in this Charter Party.

(b)   (i)   The Charterers shall provide the Owners and the Master with their full style contact details and, upon request, any other information the Owners require to comply with the ISPS Code / MTSA.

Ψ   Lennon, Murphy & Lennon LLC

Where sub-letting is permitted under the terms of this Charter Party, the Charterers shall
ensure that the contact details of all sub-Charterers are likewise provided to the Owners and
the Master.

Furthermore, the Charterers shall ensure that all sub-Charter Parties they enter into during
the period of this Charter Party contain the following provision:

"The Charterers shall provide the Owners with their full style contact details and, where sub-
letting is permitted under the terms of the Charter Party, shall ensure that the contact details
of all sub-Charterers are likewise provided to the Owners."

(ii)     loss, damages, expense or delay (excluding consequential loss, damages, expense or
delay) caused by failure on the part of the Charterers to comply with this Clause shall be for
the Charterers' account, except as otherwise provided in this Charter Party.

(c)     Notwithstanding anything else contained in this Charter Party all delay, costs or expenses
whatsoever arising out of or related to security regulations or measures required by the port
facility or any relevant authority in accordance with the ISPS Code/MTSA including, but not
limited to, security guards, launch services, vessel escorts, security fees or taxes and
inspections, shall be for the Charterers account, unless such costs or expenses result solely
from the negligence of the Owners, Master or crew. All measures required by the Owners to
comply with the ship security plan shall be for the Owners' account.

(d)     If either party makes any payment which is for the other party's account according to this
Clause, the other party shall indemnify the paying party.

## BUNKER FUEL SULPHUR CONTENT CLAUSE FOR TIME CHARTER PARTIES 2005

(a)     Without prejudice to anything else contained in this Charter Party, the Charterers shall
supply fuels of such specifications and grades to permit the Vessel, at all times, to comply
with the maximum sulphur content requirements of any emission control zone when the
Vessel is ordered to trade within that zone.

The Charterers also warrant that any bunker suppliers, bunker craft operators and bunker
surveyors used by the Charterers to supply such fuels shall comply with Regulations 14 and
18 of MARPOL Annex VI, including the Guidelines in respect of sampling and the provision
of bunker delivery notes.

The Charterers shall indemnify, defend and hold harmless the Owners in respect of any loss,
liability, delay, fines, costs or expenses arising or resulting from the Charterers' failure to
comply with this Sub-clause(s).

(b)     Provided always that the Charterers have fulfilled their obligations in respect of the supply of
fuels in accordance with Sub-clause (a), the Owners warrant that:

(i)     the Vessel shall comply with Regulations 14 and 18 of MARPOL Annex VI and with
the requirements of any emission control zone; and

(ii)     the Vessel shall be able to consume fuels of the required sulphur content when
ordered by the Charterers to trade within any such zone.

Subject to having supplied the Vessel with fuels in accordance with Sub-clause (a), the
Charterers shall not otherwise be liable for any loss, delay, fines, costs or expenses arising or
resulting from the Vessel's failure to comply with Regulations 14 and 18 of MARPOL Annex
VI.

(c)     For the purpose of this Clause, "emission control zone" shall mean zones as stipulated in
MARPOL Annex VI and/or zones regulated by regional and/or national authorities such as,

Lennon, Murphy & Lennon LLC

but not limited to, the EU and the US Environmental Protection Agency.

Lenson, Murphy & Lennon LLC

# EXHIBIT 2

Judge Pauley.

08  CV  6194

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X

CHINA SHIPPING (HK) MARINE CO. LTD.,             :

                        Plaintiff,               :       08 CV _____

                                                 :       ECF CASE
        - against -                              :

AGRENCO MADEIRA COMERICO                         :
INTERNACIONAL LDA,                               :

                                                 :
                        Defendant.               :
----------------------------------------------------------------X

## AFFIDAVIT IN SUPPORT OF PRAYER FOR MARITIME ATTACHMENT

State of Connecticut  }
                      }    ss: Town of Southport
County of Fairfield   }

        Kevin J. Lennon, being duly sworn, deposes and says:

        1.      I am a member of the Bar of this Court and represent the Plaintiff herein. I am

familiar with the facts of this case and make this Affidavit in support of Plaintiff's prayer for the

issuance of a Writ of Maritime Attachment and Garnishment, pursuant to Rule B of the

Supplemental Admiralty Rules of the Federal Rules of Civil Procedure.

### DEFENDANT IS NOT PRESENT IN THE DISTRICT

        2.      I have attempted to locate the Defendant, AGRENCO MADEIRA COMERICO

INTERNACIONAL LDA within this District. As part of my investigation to locate the Defendant

within this District, I checked the telephone company information directory, as well as the white

and yellow pages for New York listed on the Internet or World Wide Web, and did not find any

listing for the Defendant. Finally, I checked the New York State Department of Corporations'

online database which showed no listings or registration for the Defendant.

3.    I submit based on the foregoing that the Defendant cannot be found within this District within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims.

4.    Upon information and belief, the Defendant has, or will have during the pendency of this action, tangible and intangible property within this District and subject to the jurisdiction of this Court, held in the hands of in the hands of garnishees within this District, which are believed to be due and owing to the Defendant.

5.    This is Plaintiff's first request for this relief made to any Court.

### PRAYER FOR RELIEF FOR ORDER ALLOWING SPECIAL PROCESS SERVER

6.    Plaintiff seeks an Order pursuant to Rule 4(c) of the Federal Rules of Civil Procedure, for an Order appointing Patrick F. Lennon, Kevin J. Lennon, Charles E. Murphy, Nancy Peterson (Siegel), Colleen McEvoy, Anne C. LeVasseur or any other partner, associate, paralegal or agent of Lennon, Murphy & Lennon, LLC, or any process server employed by Gotham Process Servers, in addition to the United States Marshal, to serve the Ex Parte Order and Process of Maritime Attachment and Garnishment, together with any interrogatories, upon the garnishee(s), together with any other garnishee(s) who (based upon information developed subsequent hereto by the Plaintiff) may hold assets of, for or on account of, the Defendants.

7.    Plaintiff seeks to serve the prayed for Process of Maritime Attachment and Garnishment with all deliberate speed so that it may be fully protected against the potential of being unable to satisfy a judgment/award ultimately obtained by Plaintiff and entered against the Defendant.

8.    To the extent that this application for an Order appointing a special process server

with respect to this attachment and garnishment does not involve a restraint of physical property, there is no need to require that the service be effected by the Marshal as it involves simple delivery of the Process of Maritime Attachment and Garnishment to the various garnishees to be identified in the writ.

## PRAYER FOR RELIEF TO SERVE LATER IDENTIFIED GARNISHEES

9.    Plaintiff also respectfully requests that the Court grant it leave to serve any additional garnishee(s) who may, upon information and belief obtained in the course of this litigation, to be holding, or believed to be holding, property of the Defendant, within this District. Obtaining leave of Court at this time to serve any later identified garnishees will allow for prompt service of the Process of Maritime Attachment and Garnishment without the need to present to the Court amended Process seeking simply to identify other garnishee(s).

## PRAYER FOR RELIEF TO DEEM SERVICE CONTINUOUS

10.    Further, in order to avoid the need to repetitively serve the garnishees/banks, Plaintiff respectfully seeks further leave of the Court, as set out in the accompanying Ex Parte Order for Process of Maritime Attachment, for any process that is served on a garnishee to be deemed effective and continuous service of process throughout any given day on which process is served through the next day, provided that process is served the next day, and to authorize service of process via facsimile or e-mail following initial *in personam* service.

Dated:    July 8, 2008
          Southport, CT

                                             KEVIN J. LENNON

Sworn and subscribed to before me
this 8th day of July 2008.

NOTARY PUBLIC